IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| JEFFREY BRANDT | : CIVIL ACTION |
|---|---|
| v. | : NO. 17-3871 |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security. | : |

MEMORANDUM

KEARNEY, J.                                                                                     February 28, 2018

Jeffrey Lawrence Brandt asks we reverse the Social Security Commissioner's denial of his application for supplemental security income. Mr. Brandt alleges the Administrative Law Judge erred by allowing him – after he consented following repeated notice - to appear at his hearing over two sessions without representation resulting in an undeveloped record and then erred at steps four and five of the sequential analysis by finding he could work at all exertional levels. After careful review of the administrative record and Mr. Brandt's arguments concerning prejudice arising from no representation, we deny Mr. Brandt's Petition for Review in the accompanying Order.

I. Background

A. Mr. Brandt's medical history.

Mr. Brandt is a fifty-three year-old man with a high school education, and an associate degree in architectural grafting from Triangle Tech.[1] From 1997 to 2011, Mr. Brandt worked as a laborer on the railroad; a field technician and instrument operator for an engineering company; and in phone sales for printing and press companies.[2] After 2011 and before Mr. Brandt

submitted a claim in 2013, Mr. Brandt delivered pizzas for a few months but remained otherwise unemployed.[3]

Mr. Brandt's initial disability and function reports identified autism spectrum disorder, attention deficit hyperactive disorder, dysthymic disorder, oppositional defiant disorder, cannabis abuse, alcohol abuse, asthma, and social and vocational problems as the physical or mental conditions limiting his ability to work.[4] Mr. Brandt reported taking prescription medicines for depression, sleep and anxiety as prescribed by Dr. Amaro Reyes of the Berks Counseling Center[5] and treatment with Katarzyna Lesniak-Karpiak, Ph.D.[6] Dr. Lesniak-Karpiak performed a neuropsychological evaluation in 2013 to assess Mr. Brandt's intelligence, behavior, memory, attention, emotional functioning, spatial and perceptual skills, and language and communication skills.[7] Dr. Lesniak-Karpiak concluded, "Mr. Brandt appears to exhibit a primary diagnosis that is consistent with autism spectrum disorder . . . marked by problems in reading, processing, and responding to social demands and expressing his needs as well as somewhat rigid patterns of behavior."[8]

Berks Family Care performed a physical examination on Mr. Brandt in 2013. Pottstown Memorial Medical Center performed a non-nuclear stress test on Mr. Brandt in 2013.[9] The National Institute of Health conducted a radiology examination of Mr. Brandt in 2015 and found "an abnormality identified in the white matter of the left parietal lobe."[10] The National Institute of Health also conducted an Autism Diagnostic Observation Schedule, and observed scores "consistent with a research diagnosis of Autism Spectrum Disorder."[11] The administrative record also includes treatment records from 2013 to 2016 from Berks Family Care,[12] Creative Health Services,[13] and the National Institute of Health.[14]

2

### B. Mr. Brandt's arguments before the Commissioner and ALJ.

Mr. Brandt protectively applied for supplemental security income ("SSI") on November 13, 2013, alleging disability beginning October 28, 2013.[15] The Social Security Administration denied his claim on January 10, 2014.[16] Mr. Brandt requested a hearing before an Administrative Law Judge.[17]

On May 13, 2015, Mr. Brandt appeared in person to begin the hearing before Administrative Law Judge ("ALJ") Barbara Artuso.[18] Vocational expert Irene Montgomery appeared but did not testify.[19] ALJ Artuso informed Mr. Brandt of his right to representation at the hearing, and Mr. Brandt acknowledged he understood his right to representation but wished to proceed without counsel.[20] On April 21, 2016, ALJ Artuso continued hearing evidence at a supplemental hearing over video to evaluate testimony from Vocational Expert Mark Heckman.[21] ALJ Artuso did not raise the issue or discuss with Mr. Brandt his right to representation at the supplemental video session with Mr. Heckman's testimony.

On September 28, 2016, ALJ Artuso denied Mr. Brandt's request for Social Security disability benefits. Applying the required five-step sequential analysis, ALJ Artuso determined at step two Mr. Brandt has multiple severe impairments—dysthymic disorder; autism spectrum disorder; attention deficit hyperactivity disorder; small vessel ischemia and history or traumatic brain injury with hemorrhage and venous angioma; depressive disorder; and history of generalized anxiety disorder. ALJ Artuso then found these impairments, at step three, do not meet or medically equal the severity of one of the listing impairments.[22] At step four, ALJ Artuso found Mr. Brandt has the residual functional capacity to perform a full range of work at all exertional levels but with certain non-exertional limitations: "jobs involving understanding, remembering, and carrying out only simple instructions and making only simple work-related

decisions, jobs that are simple and routine in nature, and jobs that involve no interaction with the general public and only occasional interaction with coworkers and supervisors."[23] ALJ Artuso found at step five Mr. Brandt could work in medium, unskilled work, including as a janitor, food preparer, or linen room stock attendant.[24]

The Appeals Council denied Mr. Brandt's request for review of the ALJ's decision on June 23, 2017.[25]

## II. Analysis

Mr. Brandt seeks reversal of ALJ Artuso's September 28, 2016 Decision arguing he unknowingly waived his right to representation, and the ALJ failed to fully and fairly develop the record. Mr. Brandt also alleges ALJ Artuso erred by finding, in steps four and five, he could work at all exertional levels.[26]

### A. Mr. Brandt is not prejudiced by the lack of representation.

Mr. Brandt alleges he unknowingly waived representation at the hearings because his "rambling testimony" and medical records of mental impairment should have alerted ALJ Artuso Mr. Brandt could not effectively represent himself.[27] Mr. Brandt alleges ALJ Artuso failed to fully and fairly develop the record because she did not order a consultative examination, inadequately examined the vocational expert, and did not investigate Mr. Brandt's physical pain.[28]

A person applying for Social Security benefits has a right to be represented by counsel at an administrative hearing.[29] When a claimant requests a hearing, the Administration must inform the claimant of his or her right to representation.[30] Claimants, after being fully informed of the benefits of proceeding with representation, may knowingly and voluntarily waive their right to representation.[31] A claimant cannot make the informed decision to waive his or her right to

4

representation if the ALJ's instructions are inadequate, or, the claimant cannot make an informed decision to proceed unrepresented because of mental limitations.[32] While the United States Court of Appeals for the Third Circuit has not defined the directions for an ALJ to follow when informing a claimant of his right to representation, an adequate notice typically requires: (1) informing claimant of right to counsel and the benefits of obtaining counsel; (2) noting that counsel can be provided no-cost or by a contingency fee, and that fees are limited to 25% of past due benefits, subject to court approval; and (4) offering the claimant the opportunity to adjourn to find counsel.[33] If the claimant makes statements during the hearing to suggest to the ALJ the claimant is not capable of representing him or herself, then the initial waiver of representation is not made knowingly.[34]

We do not automatically remand if the claimant waives his or her right to representation; the claimant must show unfairness in the proceedings.[35] If the waiver is made unknowingly or involuntarily, the Commissioner must show the proceedings were fair and the claimant did not suffer prejudice by the lack of representation.[36] Even when the waiver is knowing and voluntary, an ALJ "should assume a more active role" in the proceedings and "has a heightened duty of care and responsibility" to the unrepresented claimant.[37]

The record confirms ALJ Artuso adequately notified Mr. Brandt of his right to be represented at the hearing. On January 15, 2014, Mr. Brandt requested a hearing to review the decision to deny his claim. The application notified Mr. Brandt of a "right to be represented at the hearing."[38] On February 18, 2014, the Social Security Administration approved Mr. Brandt's request for a hearing and notified him of his right to representation.[39] The February 18, 2014 approval letter included a two-page informational guide explaining the benefits of representation, the process of obtaining representation, and the fee a representative may charge him.[40] On March

5

17, 2015, an Administrative Law Judge notified Mr. Brandt he "may choose to have a representative help [him]."[41] The notice of hearing also included the two-page informational guide. On April 19, 2015, the Commissioner sent Mr. Brandt a two week notice of hearing again informing him of his right to representation and included the same two-page informational guide.[42]

On May 13, 2015, ALJ Artuso began the hearing again explaining Mr. Brandt's right to representation. ALJ Artuso stated, "you have the right to be represented by an attorney or non-attorney who can help you obtain information about your claim, submit evidence, explain medical terms, help to protect your rights and be in communication with me about these proceedings."[43] ALJ Artuso also told Mr. Brandt a representative can only charge a fee if it is approved by the ALJ, and there are organizations providing representation without charge. ALJ Artuso asked Mr. Brandt "Do you understand your right to representation?" Mr. Brandt replied, "Yes ma'am."[44] Based on the four notices before the hearing informing Mr. Brandt of his right to counsel, and the full explanation of his rights at the hearing, ALJ Artuso adequately informed Mr. Brandt of his right to representation.

Mr. Brandt alleges, even if the Commissioner adequately notified him of a right to representation, he decided to proceed in an uninformed manner because ALJ Artuso should have known Mr. Brandt was not competent to knowingly and voluntarily waive his right to representation.[45] Mr. Brandt cites his "rambling testimony" and the "medical evidence of severe mental impairment."[46]

A waiver is not knowing and intelligent if the record shows mental limitations that would affect a claimant's ability to proceed without representation.[47] Those limitations may include a low borderline IQ score or testimony suggesting mental limitations.[48] The mental limitations

6

presented in Mr. Brandt's testimony and on the medical record, even if not substantial evidence of a disability, show Mr. Brandt could not effectively represent himself. Mr. Brandt's first statement to ALJ Artuso "there's 50 ceiling tiles in here," indicated that his focus and attention would be limited.[49] When asked specific questions, Mr. Brandt provided long and detailed accounts of events.[50] At one point in the first hearing, Mr. Brandt described his thoughts as "always work[ing] in circles."[51] The medical records reviewed by ALJ Artuso confirm autism spectrum disorder and attention deficit hyperactive disorder, both affecting his ability to represent himself. The information provided throughout the hearing and in the medical records should have alerted ALJ Artuso of Mr. Brandt's need for representation to effectively assert his claim.

We do not automatically remand after finding Mr. Brandt unknowingly waived his right to representation. ALJ Artuso met her heightened duty by developing a full and fair record and avoided prejudice. ALJ Artuso reviewed extensive medical records documenting Mr. Brandt's mental and physical capabilities, including: treatment records from Berks Family Care;[52] treatment records from Creative Health Services;[53] treatment records, hospital records, and medical reports from the National Institute of Health;[54] a non-nuclear stress test from Pottstown Memorial Medical Center;[55] a radiology report from Dr. Nicholas Patronas;[56] and a neuropsychological evaluation from Katarzyna Lesniak-Karpiak, PhD.[57] Mr. Brandt's testimony at the hearing, although at times not directly responsive to ALJ Artuso's specific question, provided important information about his daily routine,[58] current employment,[59] and mental and physical limitations.[60] By permitting Mr. Brandt to fully describe his claim, ALJ Artuso elicited the information necessary to develop the record and to decide Mr. Brandt's disability claim.

7

Mr. Brandt argues ALJ Artuso failed to develop the record regarding his physical limitations: knee pains, carpel tunnel, and the inability to lift heavy objects.[61] Mr. Brandt argues if ALJ Artuso developed the record, she would have asked the vocational expert about lighter exertional levels.[62] The record is fully developed on the physical limitations outlined. Not only did Mr. Brandt testify to his physical capabilities on several occasions,[63] but ALJ Artuso also reviewed medical records detailing Mr. Brandt's physical limitations.[64] Whether ALJ Artuso's findings based on the record and testimony of the vocational expert are supported by substantial evidence is discussed below; but this is a different question than if the record has been fully developed on the issue.

Mr. Brandt argues ALJ Artuso should have ordered a consultative examination to appropriately examine his physical limitations.[65] The ALJ may seek a consultative examination "to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient" to decide the claim.[66] Some reasons for a consultative examination include: (1) additional evidence not in the medical records provided; (2) medical records cannot be retrieved; (3) highly technical or specialized medical evidence is needed; or (4) there has been a change in the claimant's condition.[67] The record developed by ALJ Artuso and Mr. Brandt, as noted above, includes medical records from 2013–2016 evaluating Mr. Brandt's mental and physical capabilities. Mr. Brandt had several opportunities to testify at the hearing about his physical injuries. A consultative examination would not resolve inconsistences or provide additional information missed or overlooked by the National Institute of Health, Berks Family Care, Creative Health Services, and Mr. Brandt's testimony. This information is replete in the record evaluated by ALJ Artuso.

ALJ Artuso met her heightened duty to fully and fairly develop the record and to avoid prejudice caused by the lack of representation.

## B. ALJ Artuso's decision is supported by substantial evidence.

Mr. Brandt argues ALJ Artuso's findings at step four and step five are not supported by substantial evidence because she did not consider his physical limitations when concluding he has the residual functional capacity ("RFC") to work at all exertional levels.[68] Mr. Brandt relies on medical records, as well as statements during the hearing to conclude "holding [Mr. Brandt] able to lift and carry over 100 lbs and 50 lbs [*sic*] frequently ('very heavy' work) clearly does not account in any way for back, knee, elbow, and hand and wrist pain."[69] Mr. Brandt also argues ALJ Artuso's step five finding of jobs in the national economy for Mr. Brandt is not supported by substantial evidence.[70]

### 1. Standard of review applied to ALJ Artuso's decision.

Our review of ALJ Artuso's decision is deferential and ALJ Artuso's findings of fact are conclusive if supported by substantial evidence.[71] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[72] Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence."[73] To determine whether substantial evidence supports a factual finding, we review the record as a whole.[74] We are bound by the ALJ's factual findings if they are supported by substantial evidence, even if we would have decided the matter differently.[75]

An ALJ must determine whether the claimant is disabled when examining a challenge to the Commissioner's initial decision denying benefits. Under Title II of the Social Security Act ("Act"), a person who has contributed to the program who suffers from a physical or mental disability is afforded insurance benefits.[76] Under Title XVI of the Act, a disabled person may

9

also be entitled to supplemental security income.[77] A disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[78] A claimant is only disabled if their impairments are severe to the point it makes their previous work impossible to do or precludes any other kind of gainful work available in the national economy.[79]

The Commissioner applies a five-step evaluation to determine if a claimant is disabled.[80] If the Commissioner finds disability or non-disability at any step during the analysis, the Commissioner will end the analysis.[81] Under step one, the Commissioner determines whether the claimant is engaged in substantial gainful activity.[82] If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two and is required to determine whether the claimant is suffering from a severe impairment or combination of impairments.[83] Under step three, if the claimant's impairments are severe, the Commissioner compares the impairments to a list of impairments presumed severe enough to preclude gainful employment.[84] If the claimant's impairments or its equivalent matches a listed impairment, the claimant is presumed disabled.[85] If the claimant's impairments do not match impairments on the list, the Commissioner proceeds to step four, where the Commissioner determines the claimant's residual functional capacity ("RFC").[86] A claimant's RFC is "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[87] In step five, if the claimant is unable to return to past work, the Commissioner must prove "there are other jobs existing in significant numbers in the national economy which claimant can perform, consistent with his medical impairments, age, education, past work experience, and [RFC]."[88]

## 2. ALJ Artuso's findings at steps four and five are supported by substantial evidence.

Keeping in mind our role is not to decide whether Mr. Brandt is disabled, but only to determine if ALJ Artuso's decision is supported by substantial evidence, we find ALJ Artuso's findings are supported by substantial evidence. The record includes both medical evidence and personal testimony amply supporting ALJ Artuso's finding Mr. Brandt can work at all exertional levels. Although Mr. Brandt cites evidence he is unable to do "very heavy" work,[89] "when the medical testimony or conclusions are conflicting, the ALJ is not only entitled but required to choose between them."[90]

Mr. Brandt's initial disability and function reports list autism spectrum disorder, attention deficit hyperactive disorder, dysthymic disorder, oppositional defiant disorder, cannabis abuse, alcohol abuse, asthma, and social and vocational problems as the illness, injuries or conditions limiting his ability to work.[91] The only physical injury noted in the disability and function reports is difficulty "using [his] hands."[92] In Mr. Brandt's 2013 medical report, Berks Family Care noted, "In July [Mr. Brandt] was kneeling and . . . heard pop [in his] right knee – friend had to carry him inside home" and "[Mr. Brandt] always had right knee swelling and pain . . . [he] needed surgery but didn't have insurance."[93] In a follow-up examination at Berks Family Care, the physician noted "right elbow mild tenderness . . . no tender[ne]ss right knee, no swelling."[94] Mr. Brandt also performed a non-nuclear stress test in 2013, which reported "excellent exercise endurance."[95] Berks County again evaluated Mr. Brandt and the physician found "muscles normal bulk and tone . . . strength 5/5 both arms and legs."[96] In 2015, Mr. Brandt reported to the National Institute of Health "occasional joint discomfort in his wrists and hands related to arthritis."[97]

11

ALJ Artuso evaluated evidence addressing Mr. Brandt's possible physical limitations. At the first hearing session, Mr. Brandt answered "No" in response to "do you have any physical problems that would affect your ability to work?"[98] Later in the hearing, Mr. Brandt admitted renovating his home and "put up all this drywall myself" and "stucco[ed] the seams and all this and then sand[ed] it[.]"[99] At the supplemental hearing session, Mr. Brandt admitted working at Lowes Home Improvement, and due to his age he is "not going to lift [] 80-pound bags of concrete all day or . . . 50 pounds of dirt all day either. . . [others] can do that."[100]

After considering the adduced evidence, ALJ Artuso concluded Mr. Brandt "has the residual functional capacity to perform a full range of work at all exertional levels, but with the following non-exertional limitations: he is limited to jobs involving understanding, remembering and carrying out only simple instructions and making only simple work-related decisions, jobs that are simple and routine in nature, and jobs that involve no interaction with the general public and only occasional interaction with coworkers and supervisors."[101] In reaching this conclusion, ALJ Artuso found persuasive Mr. Brandt's personal testimony stating he has no physical limitations,[102] his statements regarding his daily routine,[103] and the significant work he performed on his home.[104] Because conflicting medical evidence existed about the severity of Mr. Brandt's knee, elbow, and wrist pain, ALJ Artuso is entitled to rely on the statements of Mr. Brandt to conclude no physical impairments affect his ability to work.

Although Mr. Brandt now takes issue with ALJ Artuso's finding he can work at "all exertional levels," ALJ Artuso never relied on "very heavy" or even "heavy" work at step four or step five. At step four, ALJ Artuso found Mr. Brandt unable to perform his former jobs, which varied in skill and exertional level. At step five, ALJ Artuso considered Mr. Brandt's age,

12

experience, and RFC to propose jobs in the national economy—all of which are medium exertion, unskilled work.[105]

ALJ Artuso, supported by the testimony of the vocational expert, found Mr. Brandt able to perform the duties of a janitor, food preparer, and a linen room attendant.[106] ALJ Artuso's findings at step five are supported by substantial evidence from personal testimony and the significant medical evidence Mr. Brandt is able to perform medium exertion, unskilled work.

## III. Conclusion

While Mr. Brandt did not knowingly waive his right to representation given apparent concerns with this capacity to waive this crucial right, ALJ Artuso conducted a fair and balanced hearing avoiding the possibility of prejudice to Mr. Brandt. ALJ Artuso's findings as to steps four and five are supported by substantial evidence. In the accompanying Order, we deny Mr. Brandt's Petition for Review.

---

[1] Social Security Administrative Record ("R.") at 160 (ECF Doc. No. 9).

[2] R. 272.

[3] R. 85.

[4] R. 185, 193.

[5] R. 187.

[6] R. 189.

[7] R. 205-212.

[8] R. 206.

[9] R. 309-11; 314-15.

13

[10] R. 484-85.

[11] R. 505-06.

[12] R. 369-429.

[13] R. 510-59.

[14] R. 458-67, 72-87, 505-09.

[15] R. 160-63.

[16] R. 103.

[17] R. 107.

[18] R. 38. (the date in the transcription is incorrect).

[19] R. 38-67.

[20] R. 39-40.

[21] R. 70.

[22] R. 21-24. ALJ Artuso applied the listings for the Musculoskeletal System (1.00), Cardiovascular System (4.00), and Mental Disorders (12.00). As succinctly explained by Magistrate Judge Rice, "[t]he Listing of Impairments in Appendix 1, Subpart P, Part 404 of 20 C.F.R. is a regulatory device used to streamline the decision-making process by identifying those claimants whose medical impairments are so severe they would be found disabled regardless of their vocational background. *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). The Listing defines impairments that would prevent an adult, regardless of age, education, or work experience, from performing any gainful activity, not just substantial gainful activity. *Id.*; 20 C.F.R. § 416.925(a) (purpose of the Listing is to describe impairments severe enough to prevent a person from doing any gainful activity)." *Sutton v. Colvin*, No. 16-1884, 2016 WL 9456336, at *1 n.4 (E.D. Pa. Dec. 22, 2016).

[23] R. 24.

[24] R. 30.

[25] R. 1-3.

[26] ECF Doc. No. 1, Complaint, at pp. 3, 8.

[27] ECF Doc. No. 10 at 7.

[28] ECF Doc. No. 10 at 7.

[29] 42 U.S.C. § 406.

[30] *Livingston v. Califano*, 614 F.2d 342, 345 (3d Cir. 1980).

[31] *See, e.g., Boyd v. Barnhart*, 98 F. App'x 146, 147 (3d Cir. 2004).

[32] *Vivaritas v. Commissioner of Soc'l Sec.*, 264 F. App'x 155, 158 (3d. Cir. 2008).

[33] *George v. Commissioner of Soc'l Sec.*, No. 13-5179, 2014 WL 3955071 at *2 (D.N.J. Aug. 13, 2014) (citing *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)).

[34] *Vivaritas*, 264 F. App'x at 158.

[35] *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979); *see also Livingston v. Califano*, 614 F.2d 342, 345 (3d Cir. 1980).

[36] *Id.; see also Binion v. Shalala,* 13 F.3d 243, 245 (7th Cir. 1994) ("Without the shifting of this burden, no sanction would exist for an ALJ's inadequate explanation of the claimant's right.").

[37] *Dobrowolsky*, 606 F.2d at 345 (internal quotations omitted).

[38] R. 107.

[39] R. 111.

[40] R. 111.

[41] R. 134.

[42] R. 144.

[43] R. 40.

[44] *Id.*

[45] ECF Doc. No. 10 at 6.

[46] *Id.*

[47] *Vivaritas*, 264 F. App'x at *3-4.

⁴⁸ *Id.* at *4 (finding the statement "[I am] a little slower than other people . . . at learning things and it's always been that way" as evidence showing an ineffective waiver).

⁴⁹ R. 39.

⁵⁰ R. 61-63.

⁵¹ R. 62.

⁵² R. 307-12; 369-429; 430-57; 468-71.

⁵³ R. 331-68; 496-504; 510-59.

⁵⁴ R. 458-67; 472-87; 505-09.

⁵⁵ R. 313-14.

⁵⁶ R. 324-29.

⁵⁷ R. 292-302.

⁵⁸ R. 51-52; 59-60.

⁵⁹ R. 51-52; 72-74; 77-78.

⁶⁰ R. 61-62.

⁶¹ ECF Doc. No. 10 at 9-10.

⁶² *Id.* at 5-6.

⁶³ R. 25-27.

⁶⁴ R. 376, 379, 432, 480.

⁶⁵ ECF Doc. No. 10 at 6.

⁶⁶ 20 C.F.R. § 416.919a(b).

⁶⁷ *Id.*

⁶⁸ ECF Doc. No. 10 at 9.

⁶⁹ ECF Doc. No. 10 at 9-10.

⁷⁰ ECF Doc. No. 10 at 10.

[71] *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)).

[72] *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)).

[73] *Id.* (quoting *Rutherford*, 399 F.3d at 552) (internal quotations omitted).

[74] *Id.* (citing *Schaudeck v. Comm'r*, 181 F.3d 429, 431 (3d Cir.1999)).

[75] *Trinh v. Astrue*, 900 F. Supp. 2d 515, 518 (E.D. Pa. 2012) (citing *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001)).

[76] 42 U.S.C. § 423(a)(1)(D).

[77] 42 U.S.C. § 1381 *et seq.*

[78] 42 U.S.C. § 423(d)(1)(A); § 1382c(a)(3)(A).

[79] *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B); *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003).

[80] *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004).

[81] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[82] *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i) (mandating finding of non-disability if claimant is engaged in substantial gainful activity).

[83] *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (mandating finding of non-disability if claimant's impairments are not severe).

[84] *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[85] *Id.*

[86] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[87] *Fargnoli v. Halter*, 247 F.3d 34, 40 (3d Cir. 2001).

[88] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Plummer*, 186 F.3d at 428.

[89] ECF Doc. No. 10 at 10.

[90] *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981); *see also Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002) ("We also have made clear that we are not permitted to weigh the evidence or substitute our own conclusions for that of the fact-finder.").

[91] R. 193.

[92] R. 199 (noting no problems with lifting, squatting, bending, standing, reaching, walking, sitting, keeling, or stair climbing).

[93] R. 376.

[94] R. 379.

[95] R. 313.

[96] R. 432.

[97] R. 480.

[98] R. 51.

[99] R. 60.

[100] ECF Doc. No. 10 at 9-10; R. 78.

[101] R. 24.

[102] R. 25 ("[Mr. Brandt] stated that his back hurts but 'nothing major' and he has no physical problems affecting his ability to work.").

[103] R. 27 ("the claimant reported being able to prepare his own meals daily, drive, although he did not own a car at that time, and shop in stores for food, although he reported that his roommate handled the bills.").

[104] R. 25 ("The claimant testified that he has been fixing up his house, including putting up drywall, sanding and stuccoing the seams, and cleaning up the dust, and stated that he is doing really well.").

[105] R. 30.

[106] *Id.*